IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

WESTERN REFINING SOUTHWEST, INC.
and WESTERN REFINING PIPELINE, LLC,

               Plaintiffs,

vs.                                                   Civ. No.  16-442 JH/GBW

U.S. DEPARTMENT OF THE INTERIOR, and
SALLY JEWELL, in her official capacity as
Secretary of the Interior,

               Defendants.

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the *Motion to Dismiss for Want of Subject Matter Jurisdiction* [Doc. 29] filed by intervenors Patrick Adakai and Frank Adakai ("the Adakais"). The Court has considered the motion, along with the responses [Docs. 30 and 31] filed by the Defendant and the Plaintiffs, respectively. The Adakais chose not to file a reply brief. After consideration of the arguments advanced by the parties and the relevant legal authorities, the Court concludes that the motion should be denied.

**FACTUAL AND PROCEDURAL BACKGROUND**

This case centers on the right-of-way for a buried oil pipeline in northwestern New Mexico. Plaintiffs (collectively, "Western") operate a buried crude oil pipeline that runs 75 miles from the San Juan Basin to an oil refinery near Gallup, New Mexico. The pipeline at issue here traverses tribal, federal, state, and privately owned land, and Western holds easements for rights-of-way across 74.48 miles of the pipeline. However, this case arises from a dispute over the

easement for a .52 mile segment of pipeline that crosses Navajo Indian Allotment No. 2073, land that is held in trust by the United States and allotted to individual citizens of the Navajo Nation.

On June 22, 2009, Western filed an application to renew its existing right-of-way across 43 Navajo allotments, including the .52 mile portion of pipeline over Allotment No. 2073 that is at issue in this case. At the time, one of the applicable BIA regulations stated: "The Secretary may … grant rights-of-way over and across individually owned lands without the consent of the individual Indian owners when . . . (2) The land is owned by more than one person, and the owners or owner of a majority of the interests therein consent to the grant." 25 C.F.R. § 169.3(c)(2) (Apr. 1, 2015). On August 2, 2010, the Bureau of Indian Affairs ("BIA") granted the request and issued a twenty-year renewal of the right of way over Allotment No. 2073. This renewal was based on consent from the owners of what BIA calculated to be 60.26% of the individual Indians who held interests in Allotment No. 2073. Among these individuals were Tom Morgan (42.5% interest) and Mary B. Tom (14.16% interest). In return for their consent, the interest owners accepted compensation from Western.

On December 6, 2012, the Navajo Nation first acquired an interest in Allotment No. 2073 through a probate proceeding for Ms. Anita Adakai. In 2016, the Navajo Nation acquired additional interests in the Allotment through conveyances made under the BIA's land buyback program.

Patrick Adakai, who owns a .0038461% interest in Allotment No. 2073, appealed the BIA's decision to the Interior Board of Indian Appeals ("IBIA"). Adakai argued that the consents obtained from other landowners were flawed and that the amount of compensation was inadequate. On January 8, 2013, the IBIA vacated the renewal of the easement on an issue it raised *sua sponte*: that because Morgan and Tom had only a life estate in the property and had

bequeathed future remainder interests to others (referred to as "remaindermen") through "gift deeds," their consent was legally insufficient without additional consents from these "remaindermen." *See* Doc. 1-2 at 5, 56 IBIA at 108; Doc. 1 at ¶ 13. The decision rested in the theory that as holders of life estates only, Morgan and Tom lacked authority to encumber the Allotment beyond their lifetimes. The IBIA remanded the matter to the BIA.

As a result of this decision, Western attempted to obtain consent from Morgan and Tom's remaindermen, and was successful in doing so with Tom's. However, Western was able to obtain consent from only four of Morgan's eight remaindermen.

On April 8, 2014, the BIA relied upon the 2013 IBIA decision and the denial of consent by half of Morgan's remaindermen to deny Western's easement renewal on Allotment No. 2073. Doc. 1-1 at 1; 63 IBIA 41. Western appealed this decision to the IBIA.[1] Then, in late 2015, the BIA revised its regulations, for the first time requiring consent not only from the holder of a life estate, but also from the holders of the remainder interest. 25 C.F.R. § 169.109 (2016). Those revised regulations went into effect in April of 2016.

On May 4, 2016, the IBIA denied Western's appeal in part by refusing to require the BIA to renew the right-of-way across Allotment No. 2073 for a fixed and unqualified 20-year term. Rather, the IBIA concluded that Western was entitled to a *qualified* right-of-way for 20 years or the life of Morgan or Tom, whichever is the shortest period. Doc. 1-1 at 1-2, 13; 63 IBIA 41-42, 53. This was because "the deeds contain no language that expressly or impliedly reserved, for the life tenants, the authority to grant an interest beyond their lifetimes." *Id.* at 10, 63 IBIA at 50.

---

[1] On September 4, 2014, while its appeal of the BIA's decision was apparently pending, Western Refining filed a lawsuit in this Court seeking under 25 U.S.C. § 357 to obtain by eminent domain the right to continued presence and operation of its pipeline across Allotment No. 2073. *See Western Refining Southwest, Inc. v. 3.7820 Acres Of Land In McKinley County, New Mexico*, 14cv804 KG/KK, Complaint, Doc. 1. That case has been stayed pending the final outcome of this appeal of the administrative proceedings. *See id.* at Docs. 166 and 172.

The IBIA also found that "because the owners of a majority of the future interests in the Allotment did not consent to the [right-of-way] renewal, the [BIA] did not err in refusing to issue an unqualified 20-year renewal." *Id*. at 2, 63 IBIA 42.

In the case now before the court, Western has sued the United States and asks this Court to set aside the IBIA requirement of remaindermen consent on the grounds that it is improperly retroactive and contrary to law, including the General Right-of-Way Act of 1948, 25 U.S.C. §§ 323-328 and applicable Department of Interior regulations. Western contends that the IBIA's 2013 and 2016 decisions overturning renewal and then denying unqualified 20-year renewal of the right-of-way on Allotment No. 2073 are final agency actions reviewable under the Administrative Procedures Act (APA). Western asks for a declaration that consent of the majority of current owners, and not their remaindermen, is all that was required under the General Right-of-Way Act and then-existing regulations governing its right-of-way renewal applications, and that the BIA's 2010 renewal of the easement for a 20-year term is valid. Western also asks the Court to enjoin the Defendant to approve a renewal of its 20-year unqualified right-of-way over Allotment No. 2073.

On June 13, 2016, Patrick and Frank Adakai ("the Adakais"), who own a partial interest in the Allotment, filed their *Motion to Intervene, Answer, Motion to Dismiss, and Counterclaim* [Doc. 16]. In a *Memorandum Opinion and Order* [Doc. 28] entered November 29, 2016, the Court denied the motion to intervene but expressly allowed the Adakais to file a new motion to dismiss addressing only the issue of subject matter jurisdiction. That motion is currently before the Court.

4

## **STATUTORY FRAMEWORK**

The APA is not a jurisdiction-conferring statute; it does not directly grant subject matter jurisdiction to the federal courts. *See Califano v. Sanders*, 430 U.S. 99, 105 (1977); *Air Courier Conference v. Am. Postal Workers Union*, 498 U.S. 517, 523 n. 3 (1991). Rather, the judicial review provisions of the APA provide a limited cause of action for parties adversely affected by agency action. *See Bennett v. Spear*, 520 U.S. 154, 175 (1997); *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 n. 4 (1986). Although the APA does not directly grant jurisdiction, the federal question statute, 28 U.S.C. § 1331, "confer[s] jurisdiction on federal courts to review agency action, regardless of whether the APA of its own force may serve as a jurisdictional predicate." *Califano*, 430 U.S. at 105.

Judicial review under the APA is based upon "the whole record or those parts of it cited by a party." 5 U.S.C. § 706. The United States Supreme Court has explained, "the focal point for judicial review [under the APA] should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973) (per curiam); *accord Fla. Power & Light v. Lorion*, 470 U.S. 729, 743-44 (1985). Thus, even though judicial review rests with a district court, the district court does not act as a fact-finder. *Fla. Power & Light*, 470 U.S. at 744. Instead, "[t]he task of the reviewing court is to apply the appropriate APA standard of review . . . based on the record the agency presents . . . ." *Id*. at 743-44.

Under the APA, a reviewing court is authorized to "decide all relevant questions of law" and may either "compel agency action unlawfully withheld or unreasonably delayed" or "hold unlawful and set aside agency action, findings and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law ... [or] in excess of

statutory jurisdiction ... [or] without observance of procedure required by law...." 5 U.S.C. § 706. Where agency action is unlawfully withheld or unreasonably delayed, relief in the form of a mandatory injunction may issue under the APA. *See Mt. Emmons Min. Co. v. Babbitt*, 117 F.3d 1167, 1170 (10th Cir. 1997) (citing 5 U.S.C. § 706(1)). Such extraordinary relief may issue only to cure "final agency action for which there is no other adequate remedy in court." 5 U.S.C. § 704. Agency action is defined as including "the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or a failure to act." 5 U.S.C. § 551(13).

## DISCUSSION

In their motion to dismiss, the Adakais assert two arguments. First, they contend that the Court lacks jurisdiction to order the Department of the Interior to grant a right-of-way across the Navajo Nation's trust land (Allotment No. 2073) without the consent of the Navajo Nation itself. Doc. 29 at 2. They argue that because Western Refining seeks an order to burden the real property interests of the Navajo Nation, it bears the burden to show subject matter jurisdiction is present, and that in order to do so it must either demonstrate that Congress has enacted a statute that governs the Navajo Nation in this matter, or otherwise show that the Navajo Nation's sovereign immunity has been waived. Second, the Adakais argue that the Court lacks jurisdiction under the APA to review the decision of the Secretary of the Interior ("the Secretary") regarding the grant of a right-of-way across Indian lands. They contend that such a decision is discretionary, and that the APA expressly excludes from its purview those matters committed to agency discretion.

The Court will address the Adakais' arguments in the reverse of the order in which they were raised.

## I.     JURISDICTION UNDER THE APA

The APA provides that any "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. The Supreme Court has recognized that the APA "embod[ies] a basic presumption of judicial review." *Lincoln v. Vigil*, 508 U.S. 182, 190 (1993) (quotation omitted). However, judicial review of agency action is unavailable in two circumstances:  "(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(1)-(2). Invoking the latter subsection, the Adakais suggest that the Secretary's decision is unreviewable because the determination whether to permit the right of way at issue is committed to agency discretion by law. In support of this argument, they cite 25 U.S.C. § 323, which states: "The Secretary of the Interior be, and he is empowered to grant rights-of-way for all purposes, *subject to such conditions as he may prescribe*, over and across any lands now or hereafter held in trust by the United States for individual Indians or Indian tribes . . . ." (emphasis added). According to the Adakais, this provision exempts BIA decisions regarding rights-of-way from review under the APA.

Under existing Tenth Circuit and Supreme Court precedent, the Adakais' argument must fail. According to the Supreme Court, the "committed to agency discretion" exception "is a very narrow exception," and the legislative history of the APA "indicates that it is applicable in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply,' " *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971). There is "no law to apply" where "the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). Although a determination of whether there is "law to apply" often focuses on the

controlling statute, the Tenth Circuit has recognized that the "law to apply" can also be derived from the agency's regulations where the agency is acting pursuant to those regulations. *See McAlpine v. United States of America*, 112 F.3d 1429, 1433 (10th Cir. 1997); *Thomas Brooks Chartered v. Burnett*, 920 F.2d 634, 642 (10th Cir. 1990).

Here, there is law to apply to review the Secretary's decision, as both Western Refining and the Secretary point out. Western Refining alleges that under decisions of the Tenth Circuit, the Defendant's retroactive application of a new requirement—consent of all remaindermen—to Western Refining's request for renewal of easement is improper. This question will require the Court to consider Tenth Circuit decisions on retroactivity and their application under the facts of this case. Further, Western Refining argues that the requirement of remaindermen consent is contrary to the General Right-of-Way Act of 1948, 25 U.S.C. §§ 323-328 and the applicable Department of Interior regulations, including 25 C.F.R. § 169.3(c)(2) (2015), that were in effect until early 2016. Thus, an evaluation of the propriety of the Defendant's actions will require interpretation and application of these authorities. Further, it is not the case that decisions on rights-of-way are left to the unfettered discretion of the Department of the Interior. Rather, § 324 of the Right-of-Way Act provides, in relevant part:

> No grant of a right-of-way over and across any lands belonging to a tribe … shall be made without the consent of the proper tribal officials. Rights-of-way over and across lands of individual Indians may be granted without the consent of the individual Indian owners if (1) the land is owned by more than one person, and the owners or owner of a majority of the interests therein consent to the grant …

25 U.S.C. § 324. Thus, the Court must construe not only this statute, but also the regulations implementing it. Because there is law to apply on all of these issues, APA review is available. Thus, this portion of the motion to dismiss will be denied.

## II. JURISDICTION IN THE ABSENCE OF THE NAVAJO NATION

On August 2, 2010, when the BIA issued the twenty-year renewal of the right of way (which has been administratively overturned) over Allotment No. 2073, the Navajo nation had not yet acquired an interest in the Allotment.

The Adakais argue that Allotment No. 2073 is now tribal land under 25 C.F.R. § 169.2. As a result, they contend this Court lacks jurisdiction to grant a right-of-way across the Navajo Nation's trust land absent tribal consent (or an act of Congress abrogating the Navajo Nation's sovereign immunity) and approval by the Secretary. They contend that as a result, the Navajo Nation is a necessary and indispensable party that cannot be joined to this action by virtue of its sovereign immunity, and without jurisdiction over all necessary parties, this Court cannot grant the relief requested. In response, Western contends that (a) the Navajo Nation had no interest in the Allotment during the relevant time period, (b) neither the Navajo Nation nor any other allottee is a required party, and (c) dismissal is inappropriate even if some required party could not be joined. Because the Court agrees with Western's first argument, it need not address the others.

The issue in this case, as in any APA case, is whether the Department acted in a manner that was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, 5 U.S.C. § 706(2), when it denied Western's right-of-way renewal application. "Agency action, whether it is classified as 'formal' or 'informal,' will be set aside as arbitrary unless it is supported by 'substantial evidence' in the administrative record." *Pennaco Energy, Inc. v. U.S. Dep't of the Interior*, 377 F.3d 1147, 1156 (10th Cir. 2004) (citing *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1575 (10th Cir. 1994)). It is undisputed that Western submitted its application in 2009, that the initial agency decision was made August 2, 2010, and that both of

these events occurred before the Navajo Nation acquired its interest in the Allotment. In the subsequent appeals, the IBIA considered the nature of the consent that a right-of-way applicant must obtain from owners of interests in the Allotment. It is those decisions that are under review in this case. This Court's review under the arbitrary and capricious standard "is generally based on the full administrative record that was before all decision makers.... The district court must have before it the 'whole record' on which the agency acted." Bar MK Ranches v. Yuetter, 994 F.2d 735, 739 (10th Cir. 1993) (citations omitted).

For this reason, the change in ownership interests in the Allotment that occurred subsequent to the BIA's decision are not relevant here. There is no suggestion in the record that has been provided to this Court that the Navajo Nation's subsequent acquisition of an ownership interest in the Allotment was in the relevant administrative record or played any role in the administrative decisions currently under review. Ownership interests in real property change over time, but in terms of this Court's review, the relevant time period is August 2, 2010. Both logic and BIA regulations support this conclusion. As Western correctly points out, there could be no finality in decision making if consent calculations had to be constantly reevaluated as a result of later transfers of ownership interests through inheritance, sale, or gift. And, if the Adakais' proposed rule is correct, then any right-of-way could be undermined by any allottee at any time by merely transferring a small interest to the Navajo Nation. Foreseeing this problem, the regulations in force at the time of Western's 2009 application provided that BIA could grant a right-of-way without the consent of the heirs or devisees of a deceased owner when those heirs or devisees "have not been determined." 25 C.F.R. § 169.3(c)(4) (2009). Further, the current regulations explicitly recognize that consent calculations must be made based upon BIA

ownership records as of the date on which the application is submitted. 25 C.F.R. § 169.107(c) (2016).

In light of the foregoing, the Court concludes that the acquisition of an ownership interest by the Navajo Nation since the BIA decision under review is a change in factual circumstances that does not alter the legal issues to be decided by this Court—that is, to determine whether under the facts presented in the administrative record the decisions by the BIA and IBIA were arbitrary, capricious, or contrary to law. Accordingly, the Navajo Nation is not a necessary party and its absence has no effect on this case.

### III.   AVAILABILITY OF MANDAMUS RELIEF

In a single sentence from the "Conclusion" section of their short motion, which was dedicated to arguing the two points previously addressed above, the Adakais simply state, "Even were the Court granted jurisdiction to adjudicate Plaintiffs' claims against the Navajo Nation's real property interests in this case, the Court is not, without more, authorized to grant the extraordinary equitable relief requested by Plaintiffs." Doc. 29 at 5. Defendant construes this single sentence as an argument that "even if subject matter jurisdiction exists in this case, Plaintiffs have failed to state a valid claim for the mandamus relief they seek in this suit." Doc. 30. at 7. However, in the Court's view, the sentence in the motion that Defendants cite does not make this argument.

First, the Adakais' statement, standing alone, quite vague. It simply is unclear what argument the Adakais are making in that sentence. However, viewed in the context of the paragraph of which it is a part, it is clear to the Court that with that sentence the Adakais are merely summarizing, or revisiting, their prior argument that the Secretary has sole discretion to

determine whether or not to issue a right-of-way across an allotment, and that that the Court lacks jurisdiction to review such a decision under the APA. *See* Doc. 29 at 5-6.

Second, even if the Defendant is correct in interpreting the meaning of the Adakais' statement, that argument would be outside the scope of their authority to make in this motion. That is, the Court granted the Adakais permission to file a motion to dismiss based solely on subject matter jurisdiction. To the extent that they might be attempting to make an argument regarding the types of potential relief that may be available to Western Refining, such argument is outside the scope of the motion the Court permitted them to file. As a result, at this time the Court will not take up the question of the types of relief that may be available to Western Refining.

In light of the foregoing,

**IT IS THEREFORE ORDERED** that *Motion to Dismiss for Want of Subject Matter Jurisdiction* [Doc. 29] is **DENIED**.

_____
**UNITED STATES DISTRICT JUDGE**